IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-333

Filed: 7 January 2020

Pitt County, No. 18 CVD 2742

IN THE MATTER OF: S.C.

Appeal by Respondent from order entered 10 October 2018 by Judge Brian DeSoto in Pitt County District Court. Heard in the Court of Appeals 15 October 2019.

*The Graham.Nuckolls.Conner. Law Firm, PLLC, by Timothy E. Heinle, for the Petitioner-Appellee, Pitt County Department of Social Services.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender David W. Andrews, for the Respondent-Appellant.*

BROOK, Judge.

Stanley Corbitt ("Respondent") appeals from the trial court's order authorizing Pitt County Department of Social Services ("the Department") to provide or consent to the provision of protective services. The trial court concluded that Respondent was a disabled adult who lacked capacity to consent to the provision of protective services. Respondent's appointed Guardian *ad Litem* counsel appeals. We affirm the order of the trial court.

## I. Background

Respondent resides in Pitt County and presents a history of medical issues the treatment of which and his inability to follow recommended medical orders led to the involvement of the Department in his care. After receiving a report concerning

Respondent's inability to care for himself and make decisions about his medical treatment in August 2018, the Department filed a petition on 3 October 2018 for an order authorizing the provision of protective services, alleging that Respondent lacked capacity to consent to the provision of protective services and was without a willing, able, and responsible person to perform or obtain these services.

At the 10 October 2018 hearing, District Court Judge Brian DeSoto heard testimony from Respondent and his brother, who had been his caretaker prior to the hearing, and a social worker employed by the Department. The social worker testified that Respondent suffered from numerous bacterial and fungal infections from wounds on his leg, arm, and skull, and was experiencing significant mental health issues. The social worker went on to testify that these issues had escalated while Respondent was hospitalized to the point where Respondent had taken "scissors and cut off tissue to the bone and the tendon [was] exposed." Respondent's brother testified that he believed Respondent could "pretty much take care of himself," explaining that he visited him at least once a week prior to his hospitalization. At the conclusion of the hearing the trial court found that Respondent was a disabled adult in need of protective services due to mental incapacity. The court entered an order to that effect the same day. Respondent's

appointed Guardian *ad Litem* counsel entered timely written notice of appeal from that order.[1]

## II. Analysis

Respondent raises two arguments on appeal, which we address in turn.

## A. Subject Matter Jurisdiction

Respondent first argues that the trial court lacked subject matter jurisdiction to authorize the Department to provide or consent to provide protective services. Specifically, Respondent contends that the absence of allegations in the petition about other individuals able, responsible, and willing to provide or assist him to obtain protective services rendered the petition fatally defective, depriving the trial court of subject matter jurisdiction. We disagree.

---

[1] Respondent argues that this appeal is not moot regardless of whether the conditions leading to entry of the 10 October 2018 order subsequently changed before this appeal could be heard by our Court because the appeal presents questions capable of repetition yet evading review. The Department does not argue that this appeal is moot and we agree that the questions presented by this appeal are capable of repetition yet evading review. "[C]ases which are 'capable of repetition[] yet evading review may present an exception to the mootness doctrine.'" *130 of Chatham, LLC v. Rutherford Elec. Membership Corp.*, 241 N.C. App. 1, 8, 771 S.E.2d 920, 926 (2015) (quoting *Boney Publishers, Inc. v. Burlington City Council*, 151 N.C. App. 651, 654, 566 S.E.2d 701, 703 (2002)). Cases in this category must meet two requirements: "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (internal marks and citation omitted). The 60-day order in this case meets these requirements. Appeals from 60-day orders authorizing protective services are in their "duration too short to be fully litigated prior to [their] cessation or expiration"; they also present "a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* Holding otherwise would render them unreviewable because of the standard timetable on which review by our Court is possible. This appeal, for example, was not heard until a year and five days after the trial court entered the order being appealed – 310 days after the expiration of Judge DeSoto's 10 October 2018 order.

"Chapter 108A, Article 6, of the North Carolina General Statutes, entitled the 'Protection of the Abused, Neglected, or Exploited Disabled Adult Act,' sets out the circumstances and manner in which the director of a county department of social services may petition the district court for an order relating to provision of protective services to a disabled adult." *In re Lowery*, 65 N.C. App. 320, 324, 309 S.E.2d 469, 472 (1983). In October 2018, the time the petition at issue was filed, the Act defined "disabled adult" as follows:

> The words "disabled adult" shall mean any person 18 years of age or over or any lawfully emancipated minor who is present in the State of North Carolina and who is physically or mentally incapacitated due to mental retardation, cerebral palsy, epilepsy or autism; organic brain damage caused by advanced age or other physical degeneration in connection therewith; or due to conditions incurred at any age which are the result of accident, organic brain damage, mental or physical illness, or continued consumption or absorption of substances.

N.C. Gen. Stat. § 108A-101(d) (2017).[2]   Upon reasonable determination "that a disabled adult is being [] neglected . . . and lacks capacity to consent to protective

---

[2] This definition was amended in 2019 by Session Law 76 and went into effect on 1 October 2019. *See* S.L. 2019-76, § 14. The amended statute defines "disabled adult" as follows:

> The words "disabled adult" shall mean any person 18 years of age or over or any lawfully emancipated minor who is present in the State of North Carolina and who is physically or mentally incapacitated due to *an intellectual disability*, cerebral palsy, epilepsy or autism; organic brain damage caused by advanced age or other physical degeneration in connection therewith; or due to conditions incurred at any age which are the result of accident, organic brain damage, mental or physical illness, or continued consumption or absorption of substances.

services," N.C. Gen. Stat. § 108A-105(a) authorizes the Department to "petition the

district court for an order authorizing the provision of protective services." N.C. Gen.

Stat. § 108A-105(a) (2017). Subsection (a) goes on to require, "[t]he petition must

allege *specific facts* sufficient to show that the disabled adult is in need of protective

services and lacks capacity to consent to them." *Id.* (emphasis added). Subsection (a)

does not elaborate on what "specific facts" must be alleged in the petition. *See id.*

Subsection (c) then provides:

> If, at the hearing, the judge finds by clear, cogent, and convincing evidence that the disabled adult is in need of protective services and lacks capacity to consent to protective services, he may issue an order authorizing the provision of protective services. This order may include the designation of an individual or organization to be responsible for the performing or obtaining of essential services on behalf of the disabled adult or otherwise consenting to protective services in his behalf. Within 60 days from the appointment of such an individual or organization, the court will conduct a review to determine if a petition should be initiated in accordance with Chapter 35A; for good cause shown, the court may extend the 60 day period for an additional 60 days, at the end of which it shall conduct a review to determine if a petition should be initiated in accordance with Chapter 35A. No disabled adult may be committed to a mental health facility under this Article.

*Id.* § 108A-105(c).

---

N.C. Gen. Stat. § 108A-101(d) (2019) (emphasis added). Neither party suggests that the amendment to the definition of "disabled adult," which replaced the phrase "mental retardation," with "an intellectual disability," *see* S.L. 2019-76, § 14, is relevant to the disposition of this appeal.

"When the trial court sits without a jury, the standard of review for this Court is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *State v. Dunn*, 200 N.C. App. 606, 608, 685 S.E.2d 526, 528 (2009) (citation omitted).

Respondent suggests that the definition of "disabled adult . . . in need of protective services" in N.C. Gen. Stat. § 108A-101(e) offers guidance on the *specific facts* that must be alleged under § 108A-105(a) for a court to enter an order authorizing the provision of protective services under § 108A-105(c). Section 108A-101(e) provides:

> A "disabled adult" shall be "in need of protective services" if that person, due to his physical or mental incapacity, is unable to perform or obtain for himself essential services and if that person is without able, responsible, and willing persons to perform or obtain for his essential services.

N.C. Gen. Stat. § 108A-101(e) (2017). Respondent argues that the petition § 108A-105(a) authorizes the Department to file must contain "specific facts" indicating that he was "without able, responsible, and willing persons to perform or obtain for his essential services," quoting the language of § 108A-101(e).

Respondent goes further than arguing that read together, N.C. Gen. Stat. §§ 108A-105(a) and 108A-101(e) create a pleading requirement for petitions for authorization of the provision of protective services, however. Not only does § 108A-101(e) supply the standard against which the "specific facts" required to be alleged

by § 108A-105(a) must be measured, according to Respondent; the statutes read together establish a standard that is a jurisdictional prerequisite to a trial court's disposition of a petition for protective services. Respondent thus contends that the definition in § 108A-101(e) of "disabled adult . . . in need of protective services" combined with the authorization in § 108A-105(a) of the Department to petition for authorization to provide protective services creates a jurisdictional prerequisite similar to the verification requirement of N.C. Gen. Stat. § 7B-1104, applicable to petitions for termination of parental rights under the Juvenile Code. *See, e.g.*, *In re C.M.H.*, 187 N.C. App. 807, 809, 653 S.E.2d 929, 930 (2007) (holding that trial court lacked subject matter jurisdiction where petition for termination of parental rights failed to comply with verification requirement of N.C. Gen. Stat. § 7B-1104). Respondent posits that the absence of sufficient details in the petition about individuals "able, responsible, and willing [] to perform or obtain . . . essential services" for a disabled adult deprives the trial court of subject matter jurisdiction to find "that the disabled adult is in need of protective services and lacks capacity to consent to protective services," and enter "an order authorizing the provision of protective services." N.C. Gen. Stat. § 108A-105(c) (2017). We disagree.

"Determined to protect the increasing number of disabled adults in North Carolina who are abused, neglected, or exploited, the General Assembly enact[ed] [] [the Protection of Abused, Neglected, or Exploited Disabled Adult Act (the "Act")] to

provide protective services for such persons." N.C. Gen. Stat. § 108A-100 (2017). Notably, the language of subsection (a) of N.C. Gen. Stat. § 108A-105, the provision of the Act requiring "specific facts" to be alleged in a petition for protective services before a court may "issue an order authorizing the provision of protective services," *id.* § 108A-105(c), does not contain a requirement that these allegations be verified, unlike a petition for termination of parental rights under N.C. Gen. Stat. § 7B-1104. *See* N.C. Gen. Stat. § 7B-1104 (2017) ("The petition . . . shall be verified by the petitioner[.]"). Instead, under § 108A-105(a), the petition need only contain allegations "sufficient to show that the disabled adult is in need of protective services and lacks capacity to consent to them." *Id.* § 108A-105(a). Endorsing the rule advocated by Respondent would thus create a requirement unsupported by the text of § 108A-105.

Imposing such a requirement would also introduce practical challenges that undermine the Act's purpose. Grafting the definition provided by § 108A-101(e) onto the requirement of § 108A-105(a) to "allege specific facts" would impose a potentially more difficult to manage burden on the Department when petitioning for protective services under § 108A-105 than the Department bears when petitioning for termination of a parent's rights to a minor child under § 7B-1104. Rule 11(b) of the North Carolina Rules of Civil Procedure, the legal standard applicable to whether the verification requirement of § 7B-1104 has been met, *In re Triscari*, 109 N.C. App. 285,

287, 426 S.E.2d 435, 436-37 (1993), requires that the verification "state in substance that the contents of the pleading verified are true to the knowledge of the person making the verification, except as to those matters stated on information and belief, and as to those matters he believes them to be true." N.C. Gen. Stat. § 1A–1, Rule 11(b) (2017). Determining whether the standard articulated in the definition of "disabled adult . . . in need of protective services" had been met would be much less straightforward than comparing the verification of a petition for termination of parental rights to the language of Rule 11(b) to confirm compliance with § 7B-1104.

A comparison of § 108A-101(e) to a petition for protective services would not quickly resolve the question of whether there had been compliance with the rule advocated by Respondent because of the language used in § 108A-101(e), which contains certain indefinite terms. *See id.* § 108A-101(e) (referring to an indefinite number of "*persons* to perform or obtain . . . essential services" in defining "disabled adult . . . in need of protective services") (emphasis added). Compliance with such a rule would presumably require an undefined number of people to be identified and details about these people to be set out in allegations in a petition for protective services as a prerequisite to the disposition of the petition by the trial court. It is unclear how compliance with such a rule could be confirmed by a court disposing of a petition for protective services or a court reviewing such a disposition. What is more, compliance with this jurisdictional pleading requirement would be dependent upon

the sufficiency of allegations to meet an indefinite standard, rendering the rule difficult to administer. Adopting such an interpretation of the rule is not only unsupported by the text of the relevant statute, N.C. Gen. Stat. § 108A-105, but also would undermine the purpose of the Act.

For a trial court to enter "an order authorizing the provision of protective services," N.C. Gen. Stat. § 108A-105(c), a petition for protective services need not specify facts about individuals "able, responsible, and willing [] to perform or obtain . . . essential services," *id.* § 108A-101(e). A fair reading of the provisions of Article 6 of Chapter 108A of the General Statutes do not support grafting the definition of "disabled adult . . . in need of protective services," *id.*, onto the requirement to "allege specific facts" in a petition for protective services, *id.* § 108A-105(a), or holding that such a requirement is jurisdictional. Accordingly, we overrule this argument.

## B. Sufficiency of Findings

Respondent next argues that the trial court failed to make sufficient findings of fact to support its conclusions that he was a disabled adult in need of protective services. Specifically, Respondent contends that use of the February 2012 version of form AOC-CV-773, developed by the North Carolina Administrative Office of the Courts, failed to satisfy the specificity required of factual findings for an order authorizing protective services where the order contained only one handwritten

factual finding by the trial judge and the rest of the findings were type-written. We disagree.

As noted previously, § 108A-105(a) provides that

> [i]f the director [of the Department] reasonably determines that a disabled adult is being abused, neglected, or exploited and lacks capacity to consent to protective services, then the director may petition the district court for an order authorizing the provision of protective services. The petition must allege *specific facts* sufficient to show that the disabled adult is in need of protective services and lacks capacity to consent to them.

N.C. Gen. Stat. § 108A-105(a) (2017) (emphasis added). The court may enter an order authorizing the provision of protective services "[i]f . . . the judge finds by clear, cogent, and convincing evidence that the disabled adult is in need of protective services and lacks capacity to consent to protective services[.]" *Id.* § 108A-105(c). A trial court's order, however, need only include "specific findings of the ultimate facts," not the subsidiary or evidentiary facts whose proof may be required to establish the ultimate facts. *Kelly v. Kelly*, 228 N.C. App. 600, 606-07, 747 S.E.2d 268, 276 (2013) (citation omitted).

We hold that the trial court's order in this case contained specific findings of the ultimate facts to show that Respondent was a disabled adult in need of protective services who lacked capacity to consent to protective services. The trial court's order reads as follows:

> This matter comes on for hearing on the Petition for Order

Authorizing Protective Services filed under the statutory authority of the director of the county department of social services. Based on the record, testimony and other evidence presented to the Court, the Court makes the following findings of fact by clear, cogent and convincing evidence:

1.  The respondent is

A resident of this county or can be found in this county.

A disabled adult 61 years of age . . . present in the State of North Carolina and is physically or mentally incapacitated as defined in G.S. 108A-101(d).

2.  The petition was filed on [] 10/3/2018 and respondent was served pursuant to G.S. 1A-1, Rule 4(j) on [] 10/5/2018.

3.  The respondent is in need of protective services due to physical or mental incapacity and unable to obtain essential services without a willing, able and responsible person to perform or obtain essential services. The respondent is in need of protective services in that: the Respondent lacks capacity and is unable to make a safe discharge plan.

4.  The respondent lacks the capacity to consent to the provision of protective services.

Based on the findings of fact, the Court concludes that:

1.  This matter is properly before the Court and the District Court has jurisdiction over the subject matter and over the respondent.

2.  Respondent is a disabled adult in need of protective services and lacks the capacity to consent to such services as required by G.S. 108A-105.

3.      It is in the best interest of the respondent that this order be entered.

It is ORDERED:

1.      That Pitt County Department of Social Services is authorized to provide or consent to, without further orders of the Court, the essential services set out in G.S. 108A-1010(i).

2.      That this order shall remain in effect for 60 days unless:
   a.  Protective services are no longer needed;
   b.  The respondent regains capacity to consent to the provision of protective services;
   c.  A guardian of the person or general guardian has qualified; or
   d.  For good cause shown the Court extends the order for up to 60 additional days at the end of which time the order expires.

3.      This Matter shall be reviewed, unless previously dismissed, without further notice to the parties on [] 12/4/2018 at [] 2:00 pm in Courtroom DC04 to determine whether a petition should be filed for guardianship pursuant to G.S. Chapter 35A.

While it is true, as Respondent contends, that the trial court used form AOC-CV-773 developed by the North Carolina Administrative Office of the Courts in authorizing the Department to provide protective services, and only one of the factual findings of the trial court on this form was handwritten, we hold that the order contained ultimate findings of sufficient specificity to authorize the Department to provide protective services. This argument is overruled.

III. Conclusion

We hold that the trial court had subject matter jurisdiction to authorize the provision of protective services and that the trial court's order authorizing the provision of protective services contained ultimate factual findings of sufficient specificity to support its conclusions of law, which in turn justified the relief awarded by the court in the decretal portion of its order. We affirm the order of the trial court authorizing the provision of protective services.

AFFIRMED.

Judges BRYANT and TYSON concur.